# In the United States Court of Federal Claims

No. 10-84 C

(Filed January 18, 2011)

* * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ARRA ENERGY COMPANY I, | * | Motion to Dismiss for Lack of |
| ARRA ENERGY COMPANY II, and | * | Subject Matter Jurisdiction, |
| ARRA ENERGY COMPANY III, | * | RCFC 12(b)(1); Motion to Dismiss |
| | * | for Failure to State a Claim, |
| *Plaintiffs*, | * | RCFC 12(b)(6); Tucker Act, |
| | * | 28 U.S.C. § 1491(a)(1) (2006); |
| v. | * | Money-Mandating Source of Law; |
| | * | American Recovery and |
| THE UNITED STATES, | * | Reinvestment Act of 2009, |
| | * | Pub. L. No. 111-5, 123 Stat. 115; |
| *Defendant*. | * | Implied-in-Fact Contract. |

* * * * * * * * * * * * * * * * * * * *

*John C. Hayes, Jr.*, Washington, DC, for plaintiffs.  *Grayson Yeargin* and *Colin W. O'Sullivan*, Washington, DC, of counsel.

*Jane C. Dempsey*, United States Department of Justice, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kenneth M. Dintzer*, Assistant Director, Washington, DC, for defendant.

_____

**OPINION**

_____

**BUSH,** *Judge.*

Now pending before the court is defendant's motion to dismiss, which has been fully briefed and is ripe for a decision by the court.  Because the court concludes that it has subject matter jurisdiction over both counts of plaintiffs' complaint, defendant's motion to dismiss those counts pursuant to Rule 12(b)(1) of

the Rules of the United States Court of Federal Claims (RCFC) is denied. However, the court also holds that Count II of the complaint fails to state a claim upon which relief can be granted and must be dismissed under RCFC 12(b)(6). For those reasons, defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND[1]

In this case, plaintiffs seek more than $2.3 million in damages incurred as a result of the government's denial of plaintiffs' applications for reimbursement grants pursuant to section 1603 of the American Recovery and Reinvestment Tax Act of 2009, Pub. L. No. 111-5, Div. B, tit. I, § 1603, 123 Stat. 115, 364 (Recovery Act).[2] Plaintiffs' applications requested reimbursement grants to cover a portion of the cost of placing twenty-five mobile solar power generating systems into service in 2009. In the first count of their complaint, plaintiffs assert that the government violated its mandatory obligation to award reimbursement grants to plaintiffs under section 1603. In the second count of their complaint, plaintiffs argue in the alternative that section 1603 constitutes an offer by the government to enter into a unilateral contract, which was accepted by plaintiffs when they filed their applications for reimbursement grants. In both counts, plaintiffs seek to recover the amount to which they claim they were entitled under section 1603, as well as consequential damages stemming from the denial of plaintiffs' grant applications. Defendant argues that the entire complaint should be dismissed under RCFC 12(b)(1) because the court is without jurisdiction over both of plaintiffs' claims. In addition, defendant further argues that Count II of the complaint should be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[1]/ The facts recounted here are taken from plaintiffs' complaint.

[2]/ The "American Recovery and Reinvestment Act of 2009" encompasses the entire statute contained in Public Law Number 111-5. *See* 123 Stat. 115. Division B, Title I of the statute is referred to as the "American Recovery and Reinvestment Tax Act of 2009." *See* 123 Stat. 306. The money-mandating source asserted by plaintiffs in this case is section 1603 of the American Recovery and Reinvestment Tax Act of 2009. Except where otherwise noted, the court will use the term "Recovery Act" to refer to the entire statute, while all references to section 1603 will be to that section of Division B, Title I of the statute.

## I.     Factual History

### A.     The Recovery Act

The President signed the Recovery Act into law on February 17, 2009. Compl. ¶ 9.  The Recovery Act was designed to provide a fiscal stimulus to the nation's ailing economy in the form of various spending and tax measures and was intended to achieve several related purposes:

> (1)     To preserve and create jobs and promote economic recovery.
>
> (2)     To assist those most impacted by the recession.
>
> (3)     To provide investments needed to increase economic efficiency by spurring technological advances in science and health.
>
> (4)     To invest in transportation, environmental protection, and other infrastructure that will provide long-term economic benefits.
>
> (5)     To stabilize State and local government budgets, in order to minimize and avoid reductions in essential services and counterproductive state and local tax increases.

123 Stat. 116.

One provision of the Recovery Act established a program under which the Department of the Treasury (Treasury) awards reimbursement grants in lieu of tax credits to persons and entities that invest in specified types of renewable energy property.  Section 1603(a) provides that

> [u]pon application, the Secretary of the Treasury shall, subject to the requirements of this section, provide a grant to each person who places in service specified energy property to reimburse such person for a portion of the expense of such property as provided in subsection (b).

123 Stat. 364.  Under that provision, a person or entity may be reimbursed for a

portion of the cost of placing "specified energy property" into service in 2009 or 2010, or later than 2010 in limited circumstances.  In addition, section 1603(c) provides that Treasury "shall make payment of any grant" required under section 1603 within the sixty-day period beginning on the later of the date of the grant application or the date on which the specified energy property is actually placed in service.  *Id.*

Section 1603(b) further provides that the amount of a reimbursement grant "shall be the applicable percentage of the basis of such property."  123 Stat. 364.  The applicable percentage depends upon the type of energy property that is placed into service.  Section 1603(d) states that the term "specified energy property" includes, *inter alia*, "solar property" as that term is defined in clause (i) or (ii) of section 48(c)(1) of the Internal Revenue Code of 1986 (IRC), 26 U.S.C. § 48(c)(1) (2006).  123 Stat. 365.  Under section 1603(b)(2)(A), the applicable reimbursement rate for solar property is thirty percent.  123 Stat. 364.  In short, section 1603 requires the government to award grants in the amount of thirty percent of the basis of solar property placed into service during 2009 or 2010, provided that all of the requirements set forth in that section have been satisfied.

## B.    Plaintiffs and the Power Systems

ARRA Energy Company I (AEC I), ARRA Energy Company II (AEC II), and ARRA Energy Company III (AEC III) (collectively, plaintiffs or the AECs) are limited liability companies formed under the laws of the State of California.  Compl. ¶¶ 4-6.  In 2009, plaintiffs purchased twenty-five mobile solar-powered generating systems (the power systems) from the manufacturer and placed those power systems into service by making them available to end-users pursuant to leasing arrangements.  *Id.* ¶¶ 27, 30.  The power systems use solar energy to generate off-grid electricity that is used by end-users in the entertainment, construction, equipment rental, agricultural, and emergency disaster relief industries.  *Id.* ¶¶ 24, 30.  Plaintiffs spent a total of $7,777,715 for the power systems.[3]  *Id.* ¶¶ 27, 31.

On or before August 21, 2009, plaintiffs filed twenty-five separate

---

[3]/  AEC I spent $2,222,132 on twelve power systems, AEC II spent $2,825,265 on seven power systems, and AEC III spent $2,730,318 on six power systems.  *See* Compl. ¶ 27.

applications for reimbursement grants under section 1603 – one application for each power system.  Compl. ¶ 31.  The applications requested a total of $2,333,314.50 in grants, which represented thirty percent of the systems' claimed cost basis.[4]  *Id.*  When originally filed with Treasury, the applications included valuation reports for the power systems.  *Id.* ¶ 33.  The initial valuation reports, which had been prepared by the manufacturer, set forth plaintiffs' asserted cost basis for each of the power systems and supported the amounts requested in the grant applications.  *Id.*

In response to questions from the government, plaintiffs commissioned the preparation of an independent fair market valuation report to support the asserted cost basis of the power systems and submitted that report to the government on October 6, 2009.  *Id.* ¶¶ 34-35.  The government later confirmed the receipt of the independent valuation report provided by plaintiffs.  *Id.* ¶ 36.  On November 23, 2009, the government informed plaintiffs that it was in possession of all information needed to review the grant applications and declined plaintiffs' offer to provide additional information.  *Id.* ¶ 37.

On December 4, 2009, the government notified plaintiffs that their applications had been denied.  *Id.* ¶ 39.  In its decision, the government stated that the claimed cost basis for the power systems was not supported by sufficient documentation:

> Eligible Basis – basis of property is determined in accordance with the general rules for determining the basis of property for federal income tax purposes.  Thus, the basis of property generally is its cost and includes all items properly included by the taxpayer in the depreciable basis of the property.  Applicants must submit with their application for a Section 1603 payment documentation to support the cost basis claimed for the property.  Although you submitted documentation regarding your cost basis, we found the documentation insufficient to support your claimed basis.

---

[4]/  AEC I sought $666,639.60 in reimbursement grants, AEC II sought $847,579.50 in grants, and AEC III sought $819,095.40 in grants.  *See* Compl. ¶¶ 31, 38.

*Id.* The next week, the government confirmed that its decision on plaintiffs' applications was final, and that "[a]ny further action would need to be pursued through the judicial process." *Id.* ¶ 40.

## II.    Procedural History

On February 12, 2010, plaintiffs filed a two-count complaint in this court. In their complaint, plaintiffs seek damages to cover economic losses incurred as a result of defendant's denial of plaintiffs' applications for reimbursement grants. Plaintiffs argue in Count I of the complaint that the government violated section 1603, which plaintiffs assert is a money-mandating source of law.  In Count II of the complaint, plaintiffs argue that Treasury's denial of their grant applications breached an express or implied-in-fact contract between plaintiffs and the government.  According to plaintiffs, section 1603 was an offer by the government to enter into a unilateral contract, which plaintiffs accepted by filing timely applications for reimbursement grants.  Plaintiffs request $2,333,314.50 in damages to cover the amount they would have received if their grant applications had been approved, as well as additional consequential damages incurred as a result of the denial of those applications.

Defendant filed its answer to the complaint on May 27, 2010, and filed a motion to dismiss the complaint in its entirety on July 7, 2010.  In that motion, defendant argues that this court does not possess subject matter jurisdiction over Count I of the complaint because section 1603 is not a money-mandating source of law.  Defendant contends that section 1603 is intended to subsidize future expenditures instead of compensating plaintiffs for their past injuries or labors. For that reason, defendant asserts that Count I of the complaint is barred under the United States Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), and therefore must be dismissed under RCFC 12(b)(1) for lack of subject matter jurisdiction.  Next, defendant argues that the court may not exercise subject matter jurisdiction over Count II of the complaint because the basis of that claim is section 1603 rather than an express contractual provision providing for damages. Because the asserted contract does not contain an express damages remedy and is not based on a money-mandating source, defendant argues that plaintiffs' contractual claim is barred under the United States Court of Appeals for the Federal Circuit's decision in *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (*Rick's Mushroom*).  Furthermore, defendant argues that the alleged contract is not within the scope of the Contract Disputes Act

(CDA), 41 U.S.C. §§ 601-613 (2006), because it does not involve the procurement of goods or services.  Finally, defendant argues that Count II of the complaint should be dismissed for failure to state a claim upon which relief can be granted.  In that regard, defendant asserts that plaintiffs have failed to allege facts sufficient to demonstrate the necessary elements of an implied-in-fact contract.

In plaintiffs' response to defendant's motion to dismiss, plaintiffs first argue that the court may properly exercise jurisdiction over Count I of the complaint because section 1603 is a money-mandating source of law.  Plaintiffs note that section 1603 contains mandatory language that leaves the government with no discretion over whether to award reimbursement grants when the requirements of the statute have been met.  Next, plaintiffs assert that defendant misreads *Bowen*, and argues that several decisions of the Federal Circuit interpreting *Bowen* have limited the reach of that case to a narrow set of factual circumstances not present here.  In response to defendant's assertion that this court lacks jurisdiction over Count II of the complaint, plaintiffs contend that their contractual claim is based upon an express or implied-in-fact contract and is therefore within the jurisdiction of this court under the Tucker Act.  Plaintiffs assert that the Federal Circuit's holding in *Rick's Mushroom* is inapposite because that case involved an unusual cost-sharing agreement that did not contain an express damages remedy.  Finally, plaintiffs assert that Count II of the complaint should not be dismissed for failure to state a claim because it is based upon well-pleaded factual allegations that the government entered into an express or implied-in-fact contract with plaintiffs and breached that contract.

In its reply to plaintiffs' response, defendant reiterates its argument that Count I of plaintiffs' complaint is barred under *Bowen*.  Defendant asserts that a statute must contain an express or implied damages remedy in order to be a money-mandating source under the Tucker Act.  Defendant argues that when a source of law, like section 1603, mandates the payment of money in the form of a grant or a subsidy, that source is not money-mandating because such payments do not constitute "money damages."  On the contrary, according to defendant, the claims raised by plaintiffs are equitable in nature and would require prospective injunctive relief as a remedy.

Next, defendant argues that section 1603 is not money mandating for the additional reason that the government possesses the discretion to deny grant applications when an applicant does not meet the requirements of the statute.

7

Defendant also attempts to distinguish the cases cited by plaintiffs as limiting the reach of *Bowen*, noting that each of those cases was based on a contractual relationship, rather than a statute requiring the payment of a grant or subsidy. In contrast to plaintiffs' limited reading of *Rick's Mushroom*, defendant argues that the holding in that case established a general rule that limits this court's jurisdiction over contractual claims to those based on contracts with an express damages clause. While noting the general presumption that damages are an available remedy for breach of contract, defendant argues that the presumption does not apply here because section 1603 is not money mandating and does not contain an express damages remedy for its violation. Finally, defendant challenges plaintiffs' assertion that their factual allegations are sufficient to survive a motion to dismiss for failure to state a claim. Defendant argues that plaintiffs have failed to allege facts sufficient to meet any of the requirements of an implied-in-fact contract with the government.

## DISCUSSION

### I.  Standards of Review

### A.  Standard of Review under RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). The relevant issue in a motion to dismiss under RCFC 12(b)(1) "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Patton v. United States*, 64 Fed. Cl. 768, 773 (2005) (quoting *Scheuer*, 416 U.S. at 236). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461-62 (Fed. Cir. 1998); *Rocovich v. United States*, 933 F.2d 991, 993

(Fed. Cir. 1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed. Cir. 2002).  "Indeed, the court may, and often must, find facts on its own."  *Id.*  If jurisdiction is found to be lacking, this court must dismiss the action.  RCFC 12(h)(3).

## B.    Standard of Review under RCFC 12(b)(6)

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  When considering a motion to dismiss under this rule, "the allegations of the complaint should be construed favorably to the pleader."  *Scheuer*, 416 U.S. at 236.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is warranted under RCFC 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  To survive a motion to dismiss for failure to state a claim, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555. While a complaint is not required to contain detailed factual allegations, it must provide "enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.  In order to meet the requirement of facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## II.    Analysis of Plaintiffs' Claims

Plaintiffs assert an entitlement to damages under two alternative theories of liability.  First, plaintiffs argue that the government was obligated to make payments to them under section 1603 and violated that obligation when it denied plaintiffs' applications for reimbursement grants.  In addition, plaintiffs also contend that the enactment of section 1603 constituted an offer by the government to enter into a unilateral contract, which plaintiffs accepted by filing their applications for reimbursement grants.  Plaintiffs assert that the government breached its contract with plaintiffs when it denied the grant applications.  In its motion to dismiss, defendant first argues that both counts of the complaint are beyond the jurisdiction of this court.  Defendant further argues that Count II of the complaint fails to state a claim upon which relief can be granted.  For the reasons discussed below, the court concludes that it possesses jurisdiction over both counts of the complaint.  In addition, the court also holds that the contentions of fact in

Count II of the complaint fail to state a claim upon which relief can be granted. For those reasons, defendant's motion to dismiss is granted in part and denied in part.

### A.   Motion to Dismiss the Complaint in Its Entirety for Lack of Subject Matter Jurisdiction

### 1.   This Court Has Jurisdiction over Count I of the Complaint

Defendant argues that Count I of the complaint must be dismissed under RCFC 12(b)(1) because section 1603 is not a money-mandating source of law.  In support of that argument, defendant asserts that the first count of plaintiffs' complaint is barred in this court under the Supreme Court's decision in *Bowen*. Defendant argues that this court's jurisdiction is limited to claims for "damages," and that plaintiffs have not requested money damages but instead seek to enforce the terms of section 1603 itself.  In addition to its argument that Count I is barred under *Bowen*, defendant further argues that section 1603 is not money mandating because the government has discretion to deny payments when it determines that the requirements of that section have not been satisfied.

### a.   Section 1603 Is a Money-Mandating Source of Law

In order to establish subject matter jurisdiction in this court, plaintiffs must demonstrate that the government has consented to suit and that there is a substantive legal basis for their claims.  *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (*White Mountain Apache*) ("Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver.") (citations omitted).

Plaintiffs assert that this court has jurisdiction over both of their claims under the Tucker Act, which provides in relevant part that the

> United States Court of Federal Claims shall have
> jurisdiction to render judgment upon any claim against
> the United States founded either upon the Constitution, or
> any Act of Congress or any regulation of an executive
> department, or upon any express or implied contract with

> the United States, or for liquidated or unliquidated
> damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2006).  The Federal Circuit has explained that the Tucker Act "does two things:  (1) it confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and (2) it waives the Government's sovereign immunity for those actions."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).  However, the statute "does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."  *Id.*

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act."  *United States v. Mitchell*, 463 U.S. 206, 216 (1983).  On the contrary, "the claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'"  *Id.* at 216-17 (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)) (footnote and quotations omitted).  If the asserted legal basis of a claim does not mandate the payment of money by the government, the court must dismiss the action because "the absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act."  *Fisher*, 402 F.3d at 1173.

In general, a statute will be deemed to be a money-mandating source of law if it compels the government to make a payment to an identified party or group. *See Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967) ("Under Section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can be fairly interpreted as mandating compensation by the Federal Government for the damage sustained.").  Under the "fair interpretation" standard, the asserted money-mandating source of law must be "reasonably amenable to the reading that it mandates a right of recovery in damages."  *White Mountain Apache*, 537 U.S. at 473.

Whether a statute is money mandating under the Tucker Act generally turns on whether the government has discretion to refuse to make payments under that statute.  In that regard, the Federal Circuit has held that a source of law is not money mandating when the government enjoys complete discretion in determining to whom it will make payments.  *See Doe v. United States*, 463 F.3d 1314, 1324

11

(Fed. Cir. 2006) ("A statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group.") (citing *Doe v. United States*, 100 F.3d 1576, 1582 (Fed. Cir. 1996)).  In addition, the Federal Circuit has held that a statute is money mandating when the government has an absolute duty to make payments to any person who meets the specific requirements set forth in the statute.  *See Grav v. United States*, 886 F.2d 1305, 1307 (Fed. Cir. 1989) (*Grav II*) (holding that a statute was money mandating because it required the government to enter into a contract to pay money to any recipient who met the express requirements of the statute).

Plaintiffs assert that section 1603 is money mandating because Treasury does not possess any discretion in determining whether to award a grant under that section.  Defendant, in contrast, contends that the language of that section is not money mandating because it does not include an express damages remedy for its violation.  The court concludes that section 1603 compels the payment of money by the government and does not provide the government with any discretion to refuse such payments when the specific requirements of the statute are met.

First, section 1603(a) provides that

> [u]pon application, the Secretary of the Treasury *shall*, subject to the requirements of this section, provide a grant to each person who places in service specified energy property to reimburse such person for a portion of the expense of such property as provided in subsection (b).

123 Stat. 364 (emphasis added).  The quoted language compels the government to provide a grant to any person who places specified energy property into service, subject only to the express requirements set forth in the statute.  *See Greenlee County, Ariz. v. United States*, 487 F.3d 871, 877 (Fed. Cir. 2007) (noting that "use of the word 'shall' generally makes a statute money-mandating"); *Agwiak v. United States*, 347 F.3d 1375, 1380 (Fed. Cir. 2003) ("We have repeatedly recognized that the use of the word 'shall' generally makes a statute money-mandating.").  Defendant asserts that, because the government is required to determine whether an applicant has satisfied the requirements of section 1603, it necessarily has the discretion to deny applications for grants under that section.  While defendant asserts that the requirements of section 1603 are contingent upon

its interpretation of the IRC, *see* Def.'s Reply at 4, it completely fails to point to any specific language in the statute that might be interpreted to confer such discretion upon the government.  Although the government must determine whether the requirements of the statute have been met, the court concludes that those determinations are ministerial in nature.

For example, the government must determine whether an applicant for a reimbursement grant has placed specified energy property into service during the relevant time period.  That determination involves two separate inquiries.  First, the government must determine whether the subject of the application meets the definition of "specified energy property."  In addition, the government must determine whether that property was placed into service in either 2009 or 2010.[5] As discussed below, neither of those determinations involves the exercise of discretion by the government.

The statute states that specified energy property includes "solar property," and incorporates by reference the definition of energy property as set forth in section 48(a)(3)(A) of the IRC.  That section of the IRC, in turn, provides that such property includes, *inter alia*, equipment that uses solar energy to generate electricity.  *See* 26 U.S.C. § 48(a)(3)(A)(i).  In reviewing plaintiffs' applications for reimbursement grants, the government was required to determine whether their power systems use solar energy to generate electricity.  There does not appear to be any dispute as to whether the power systems meet the definition of specified energy property under section 1603.  In any event, the determination of whether the power systems meet that definition cannot be viewed as involving "discretion" to approve or deny those applications.

Likewise, the factual determination of whether the power systems were placed in service in 2009 or 2010 does not involve the exercise of any discretion by the government.  In their complaint, plaintiffs allege that the power systems were placed into service in 2009, and defendant does not appear to dispute that allegation.  Plaintiffs further note that, under applicable regulations, energy property is deemed to be placed in service in the taxable year in which the

---

[5]/  As noted above, reimbursement grants are also available for energy property placed in service later than 2010 when certain conditions are met.  Because there appears to be no dispute that plaintiffs placed the power systems into service in 2009, the additional conditions applicable to property placed in service after 2010 are inapplicable here.

"property is placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity."  Compl. ¶ 20 (quoting 26 C.F.R. § 1.46-3(d)(1)(ii) (2010)).  Defendant does not assert that the standard set forth in that regulation confers any discretion to deny an application for reimbursement grants, and the court does not discern the existence of any such discretion in that regulatory language.  Nor do the other necessary determinations cited by defendant require the exercise of discretion by the government.  *See* Def.'s Mot. at 4 (noting that the government must determine whether the energy property is installed on other property or used predominantly outside of the United States, and whether its use began with the applicant).

The court thus holds that section 1603 does not provide the government with discretion to deny an application for reimbursement grants when the express requirements of that section are met.  However, even if the court were to hold that Treasury enjoyed some degree of discretion in deciding whether to award a grant to an applicant that met all of the requirements set forth in the statute, section 1603 would nonetheless meet the test for a discretionary money-mandating source of law as set forth in *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364-65 (Fed. Cir. 2005) (*Samish II*).  When the government does not possess complete discretion over whether to make a payment under a statute, the appropriate standard for determining whether that statute is money mandating is the standard articulated by the Federal Circuit in *Samish II*:

> The court has found Congress provided [for] damage remedies where the statutory text leaves the government no discretion over payment of claimed funds.  But Tucker Act jurisdiction is not limited to such narrow statutory entitlements.  Certain discretionary schemes also support claims within the Court of Federal Claims jurisdiction.  These include statutes:  (1) that provide "clear standards for paying" money to recipients; (2) that state the "precise amounts" that must be paid; or (3) as interpreted, compel payment on satisfaction of certain conditions.

*Samish II*, 419 F.3d at 1364 (citation omitted).  In short, if the court determines that a discretionary source of law meets one of the three requirements set forth above, that source will be deemed to meet the fair interpretation standard and is therefore

14

money mandating for purposes of this court's jurisdiction under the Tucker Act.

Section 1603 meets the test set forth in *Samish II* because it provides a clear standard for the payment of money and states a precise amount of money to be paid. The statute provides that the amount of the grant "*shall be* the applicable percentage of the basis of such property," 123 Stat. 364 (emphasis added), and further states that the applicable percentage for solar property is thirty percent. While section 1603 does not define the basis of the property, it notes that the "[t]erms used in this section which are also used in section 45 or 48 of the [IRC] shall have the same meaning for purposes of this section as when used in such section 45 or 48." 123 Stat. 366. Under the IRC, the term "basis" is generally used to refer to the cost of the property to the taxpayer. *See* 26 U.S.C. § 1012 (2006) ("The basis of property shall be the cost of such property . . . ."); Compl. ¶ 39 (quoting the decision denying plaintiffs' grant applications, which noted that "the basis of property generally is its cost and includes all items properly included by the taxpayer in the depreciable basis of the property"). While the government may decide, as it has in this case, that an applicant has miscalculated or misrepresented the basis of its property, it has no discretion to reimburse an applicant for less than, or more than, thirty percent of the correct basis of the property.

Defendant notes that "Congress did not pass the statute to permit those seeking grants to take advantage of the Government." Def.'s Reply at 5. Because the government must be allowed to deny fraudulent applications, defendant argues section 1603 cannot be viewed as money mandating:

> If an applicant inflates the basis, Treasury has the discretion of denying the grant and protecting the statute's objectives. Congress has not legislated itself into being a patsy. It is precisely this type of discretion – and judgment – that exists in Section 1603 and prevents the statute from being deemed money-mandating.

*Id.* There is no question that the government has the authority to deny fraudulent claims and applications that do not meet the requirements set forth in the statute. However, that ability does not affect the money-mandating status of the statute.

As noted above, section 1603 is money mandating because it compels the

payment of money by the government *when the requirements of the statute are met.*  Many statutes require the government to make an initial eligibility determination before making payments under those statutes, but the need for such ministerial determinations does not negate the money-mandating status of those statutes.  *See, e.g.*, *Greenlee County*, 487 F.3d at 874 (finding that a statute was money mandating, despite its requirement that the government determine whether a county or municipality was a "unit of local government" and thus eligible for payments under the program); *Doe*, 463 F.3d at 1325 (noting that a statute requiring the payment of administratively uncontrollable overtime pay for employees holding certain positions was money mandating, even though it required the government to determine whether any particular position met the requirements of the statute); *Fisher*, 402 F.3d at 1174-75 (holding that the military disability statute is money mandating because it requires the payment of money to disabled military personnel when the government determines that the requirements of the statute have been met).  In addition, even if the preliminary determinations made by the government under section 1603 involve the exercise of some level of discretion, the statute would nonetheless be money mandating under *Samish II* because it "compel[s] payment on satisfaction of certain conditions."  419 F.3d at 1364.

Finally, the court notes that nothing in the legislative history of section 1603 suggests that Congress intended to endow Treasury with the discretion to refuse payments to any applicant that met the requirements set forth in the statute.[6]

---

[6] Plaintiffs' characterization of section 1603 as a money-mandating source is further supported by a proposed amendment of that section.  In March 2010, Senator Charles E. Schumer introduced the American Renewable Energy Jobs Act, S. 3069, 111th Cong. (2010), which seeks, *inter alia*, to endow Treasury with precisely the discretion that defendant claims the agency already possesses under the current statute.  Specifically, the proposed amendment provides the following:

> (a)     Discretion To Provide Grants – Subsection (a) of section 1603 of division B of the American Recovery and Reinvestment Act of 2009 is amended by striking 'Upon application, the Secretary of the Treasury shall' and inserting 'Upon application, the Secretary of the Treasury may'.

*Id.* § 2(a).  While this proposed amendment is entitled to less weight than the legislative history

Indeed, defendant does not assert that there is any evidence in the legislative history supporting its interpretation of section 1603.  On the contrary, defendant merely argues that nothing in the legislative history of section 1603 clearly supports plaintiffs' contrary interpretation of the statute.  The court concludes that section 1603 can be fairly interpreted as mandating the payment of money by the government when the specific requirements of the statute have been satisfied.  The statute is therefore money mandating.

### b.    Count I Is Not Barred under *Bowen*

Defendant relies on *Bowen* for the broad proposition that this court may not exercise jurisdiction over any claim for the payment of money under a statute that is designed to subsidize future expenditures by awarding grants to recipients.  Under defendant's reading of *Bowen*, a statute will be deemed money mandating only when it contains an express damages remedy to compensate recipients for past injuries or labors incurred as a result of the government's violation of the statute.  As discussed below, defendant's argument misreads *Bowen* and ignores the Federal Circuit's subsequent application of the jurisdictional analysis set forth in that case.

In *Bowen*, the Commonwealth of Massachusetts (the State) challenged a disallowance decision by the United States Department of Health and Human Services (HHS) under the Medicaid program.  The State filed suit in district court under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706 (2006), seeking declaratory, injunctive and monetary relief.  HHS argued that the district court did not have subject matter jurisdiction over the suit under the APA because it sought monetary damages.  For that reason, according to HHS, jurisdiction was proper only in the United States Claims Court.  The Supreme Court rejected the government's argument and held that the State's suit was within the jurisdictional scope of the APA.

The Supreme Court first noted that the waiver of sovereign immunity contained in the APA is subject to three important limitations.  First, the APA waives immunity only for those claims "seeking relief other than money damages."

---

of section 1603 itself, it nonetheless provides some support for plaintiffs' interpretation of that section.

5 U.S.C. § 702.  Second, suits under the APA are permitted only when "there is no other adequate remedy in a[nother] court . . . ."  5 U.S.C. § 704.  Finally, a claim under the APA is proscribed when "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.  Because of these jurisdictional limitations, the Court engaged in a three-part analysis to determine:  (1) whether the State sought "money damages" in its suit; (2) whether there was an adequate remedy available in another forum; or (3) whether the suit was barred in district court under any other jurisdictional statute.  The Court answered each of those questions in the negative.

First, the Court held that while judgment in favor of the State would result in the payment of money by the government, the monetary relief sought could not be characterized as "damages."  On the contrary, the Court explained that the

> State's suit to enforce § 1396b(a) of the Medicaid Act, which provides that the Secretary "shall pay" certain amounts for appropriate Medicaid services, is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money.

487 U.S. at 900 (footnote omitted).  In addition, the monetary relief requested by the State was not simply the payment of a certain sum of money.  Instead, the reversal of the disallowance decision represented "an adjustment – and, indeed, usually a relatively minor one – in the size of the federal grant to the State that is payable in huge quarterly installments."  *Id.* at 893.  Such adjustments on an open government account cannot, according to the Court, be described as "damages," as that term is used in section 702 of the APA.

Second, the Court held that the suit was not barred under section 704 of the APA because there was not an adequate remedy in another court.  In that regard, the Court rejected the government's contention that there was an adequate remedy available in the Claims Court:

> As the facts of these cases illustrate, the interaction between the State's administration of its responsibilities

> under an approved Medicaid plan and the Secretary's
> interpretation of his regulations may make it appropriate
> for judicial review to culminate in the entry of
> declaratory or injunctive relief that requires the Secretary
> to modify future practices.  We are not willing to assume,
> categorically, that a naked money judgment against the
> United States will always be an adequate substitute for
> prospective relief fashioned in the light of the rather
> complex ongoing relationship between the parties.

487 U.S. at 905 (footnote omitted).  The Court noted that a money judgment would have been an incomplete and inadequate remedy in that case because the Claims Court did not possess the general equitable powers needed to manage the "relationships between States and the Federal Government that occur over time and that involve constantly shifting balance sheets . . . ."  *Id.* at 904 n.39.

Finally, the Court held that jurisdiction under the APA was not foreclosed by any other jurisdictional statute.  In that regard, the Court first noted that jurisdiction in the Claims Court under the Tucker Act was "doubtful."  *See id.* at 905-06.  Because the "quarterly payments of federal money are actually advances against expenses that have not yet been incurred by the State, it is arguable that a dispute concerning the status of the open account is not one in which the State can claim an entitlement to a specific sum of money that the Federal Government owes to it."  *Id.* at 907 (footnote omitted).  In addition, the Court noted that the types of statutes that have generally been interpreted as money mandating for purposes of jurisdiction under the Tucker Act are those "attempt[ing] to compensate a particular class of persons for past injuries or labors."  *Id.* at 905 n.42.  The Medicaid statute, in contrast, "directs the Secretary to pay money to the State, not as compensation for a past wrong, but to subsidize future state expenditures."  *Id.*  The Court further explained that it was reasonable to assume that Congress intended to lodge jurisdiction over challenges to Medicaid disallowance decisions in the district courts because "the nature of the controversies that give rise to [such] decisions typically involve state governmental activities that a district court would be in a better position to understand and evaluate than a single tribunal headquartered in Washington."  *Id.* at 907-08.

In its motion to dismiss the complaint, defendant seeks to reduce the complex jurisdictional analysis articulated in *Bowen* into a stark bright-line rule

that precludes jurisdiction in this court over any claim that seeks the payment of money under a statute that subsidizes future activities. The court first notes that even under defendant's proposed interpretation of *Bowen*, plaintiffs' suit would not be barred under the holding in that case. As defendant appears to recognize, the grants awarded under section 1603 are designed not to subsidize future behavior, but to reimburse applicants for costs that were already incurred. *See* Def.'s Mot. at 8 (noting that the grants denied to plaintiffs "would have been based upon the money that the plaintiffs had previously invested in solar technology"). Perhaps more importantly, however, defendant's proposed reading of *Bowen* is not supported by the holding in that case or by the Federal Circuit's subsequent application of that holding in later cases.

First, the court notes that the principal issue addressed in *Bowen* was not the limits of this court's jurisdiction under the Tucker Act; rather, the dispute in that case was related to the jurisdiction of the district courts under the APA. Because this court's jurisdiction is not defined by the APA, this court's jurisdictional analysis is not fully addressed by the three-part analysis of APA jurisdiction set forth in *Bowen*. Instead, the relevant question is whether the asserted money-mandating source can be fairly interpreted as mandating the payment of compensation by the government. *See Mitchell*, 463 U.S. at 216-17.

In this case, the court has held that section 1603 can be fairly interpreted as mandating the payment of money by the government when all of the requirements of the statute have been met. In addition, neither party contests or challenges the premise that a money judgment in favor of plaintiffs in this court would provide them with a complete and adequate remedy for the relief currently sought. *See Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005) (noting that "[t]he availability of an action for money damages under the Tucker Act . . . is presumptively an 'adequate remedy' for § 704 purposes.") (citations omitted); *see also Suburban Mortg. Assocs., Inc. v. United States*, 480 F.3d 1116, 1126 (Fed. Cir. 2007) (noting that the three-part *Bowen* analysis should begin with the issue of whether there is an adequate remedy in another court, because if that question is answered in the affirmative, then the district courts lack jurisdiction under section 704 of the APA, and there is no further need to determine whether the requested relief constitutes damages for purposes of section 702 of the APA). For those reasons, contrary to defendant's assertion, it is clear that a district court would not have jurisdiction over plaintiffs' claims under the APA, and this court is the proper

forum for plaintiffs' suit.[7]

Finally, defendant asserts that this court may never exercise jurisdiction over suits based on a statute that requires the payment of money as a grant or subsidy. In addition, defendant argues that this court has jurisdiction only over those claims that are based on a statute containing an express damages remedy for its violation by the government. Both of those assertions are contradicted by multiple decisions of the Federal Circuit. *See, e.g.*, *Greenlee County*, 487 F.3d at 877 (holding that a statute providing for payments to local governments to cover the loss in tax revenues attributable to the tax-exempt status of federal lands was money mandating); *Kanemoto v. Reno*, 41 F.3d 641 (Fed. Cir. 1994) (holding that a statute requiring the payment of money to individuals of Japanese descent who were placed in internment camps during World War II was money mandating). The statutes at issue in *Greenlee County* and *Kanemoto*, which were held to be money mandating in those cases, did not contain an express provision allowing for the recovery of damages in the event that the government breached its obligations under those statutes. On the contrary, those two statutes – like section 1603 – simply commanded the payment of money to recipients upon the satisfaction of certain conditions. For all of the foregoing reasons, the court concludes that Count I of plaintiffs' complaint is not barred under *Bowen*.

---

[7]/ Similarly, *Katz v. Cisneros*, 16 F.3d 1204 (Fed. Cir. 1994), and *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196 (Fed. Cir. 1997) (*NCMS*), both of which defendant relies upon, have no clear application to this case. In *Katz*, the plaintiff challenged the calculation of contract rents under a federal housing program by the Department of Housing and Urban Development (HUD). The Federal Circuit held that the district court could exercise jurisdiction over the suit under the APA because there was no adequate remedy in this court. *See Katz*, 16 F.3d at 1209 ("[Plaintiff] unmistakably asks for prospective relief. An adjudication of the lawfulness of HUD's regulatory interpretation will have future impact on the ongoing relationship between the parties. The Court of Federal Claims cannot provide this relief."). In *NCMS*, the Federal Circuit held that a suit seeking the release of certain funds appropriated to the United States Air Force by Congress pursuant to a cooperative agreement between the plaintiff and the Air Force was within the jurisdiction of the district court under the APA because those funds were not "damages" and the Court of Federal Claims could not provide an adequate remedy in light of the probable need for declaratory or injunctive relief. *See NCMS*, 114 F.3d at 202. Both of these cases are distinguishable from the present case inasmuch as this court can provide a complete and adequate remedy.

### 2.     The Court Has Jurisdiction over Count II of the Complaint

In Count II of the complaint, plaintiffs argue that section 1603 constituted an offer by the government to enter into a unilateral contract, and that plaintiffs accepted that offer when they filed their applications for reimbursement grants. Defendant responds that plaintiffs' contract claim is barred under the decision of the Federal Circuit in *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338 (Fed. Cir. 2008) (*Rick's Mushroom*).  For the reasons discussed below, the court holds that it possesses subject matter jurisdiction over Count II of the complaint.

Under the Tucker Act, this court possesses subject matter jurisdiction over claims based "upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1).  The Tucker Act merely "waiv[es] sovereign immunity and provid[es] the forum for adjudication[,]" and plaintiffs must also point to a substantive source of law that compels the payment of money in order to establish jurisdiction in this court.  However, the Federal Circuit has noted that a well-pleaded allegation of an express or implied-in-fact contract is sufficient to survive a motion to dismiss under RCFC 12(b)(1).  *See Bank of Guam v. United States*, 578 F.3d 1318, 1325 (Fed. Cir. 2009) ("A well pleaded allegation of a breach of either an express or implied-in-fact contract is sufficient to overcome challenges to jurisdiction.") (citing *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)).  Because Count II of the complaint alleges the existence of a contract between plaintiffs and the government, defendant's motion to dismiss that count under RCFC 12(b)(1) must be denied.

However, defendant argues that the asserted contract in this case does not provide a sufficient basis for jurisdiction under the Tucker Act because it is not based upon a money-mandating statute.  In support of that argument, defendant relies upon the decision of the Federal Circuit in *Rick's Mushroom*, which held that this court did not possess subject matter jurisdiction over a contract claim based upon a cost-share agreement between the plaintiff and the government.  Under that agreement, the government provided detailed design specifications for the construction of a spent mushroom substrate facility and agreed to cover a portion of the cost of constructing that facility.  When the plaintiff in that case sought to recover damages from the government under the cost-share agreement, this court concluded that it did not have jurisdiction over the claim because the agreement was not a contract for the procurement of goods or services and was thus beyond the scope of the CDA.  On appeal, the plaintiff argued that this court had erred in

dismissing its contract claim because that claim was based in part on an implied-in-fact contract with the government, which the plaintiff claimed was squarely within the subject matter jurisdiction of this court under the Tucker Act.

The Federal Circuit affirmed this court's dismissal of the contract claim. First, the court noted that the cost-share agreement did not provide an express substantive right to recover money damages for its breach, and that any claim based on that agreement was not covered by the CDA because it did not govern the procurement of goods or services. *Rick's Mushroom*, 521 F.3d at 1343-44. Next, the Federal Circuit noted that the plaintiff had asserted that its contract claim was based upon the existence of an implied-in-fact contract, but further observed that the complaint failed to identify a money-mandating statute that would have allowed the court to infer the existence of an implied contract. *See id.* at 1344. Finally, the Federal Circuit held that the implied contract claim was precluded by the existence of an express contract between the government and the plaintiff for the same subject matter. *See id.* Thus, the Federal Circuit concluded that because "[the plaintiff] and the federal government [had] entered into an express contract," *id.*, the court could not reasonably infer an implied contract.

Defendant argues that the identification of an express damages clause or some other money-mandating source is a jurisdictional prerequisite to any contract claim under the Tucker Act. Regardless of whether that assertion is supported by a fair reading of *Rick's Mushroom*, the court holds that it has jurisdiction over Count II of plaintiffs' complaint even under the standard proposed by defendant.[8] First, defendant's reliance on *Rick's Mushroom* is predicated on its incorrect assertion

---

[8] The court need not address whether there is an inconsistency between the decision in *Rick's Mushroom* and the long line of Federal Circuit precedent holding that this court has subject matter jurisdiction over contract claims under the Tucker Act, regardless of whether the asserted contract contains an express damages clause or is based upon a money-mandating statute. *See, e.g.*, *Trauma Service Group*, 104 F.3d at 1325; *Lewis v. United States*, 70 F.3d 597, 603 (Fed. Cir. 1995). However, to the extent that *Rick's Mushroom* is inconsistent with the Federal Circuit's earlier pronouncements on that issue, those earlier cases are controlling. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*. Where there is direct conflict, the precedential decision is the first.") (citation omitted). For the reasons discussed *infra*, the court further notes that Count II of plaintiffs' complaint must be dismissed regardless of whether that count is within this court's jurisdiction.

that section 1603 is not money mandating. *See* Def.'s Mot. at 6 ("Because plaintiffs rest their breach-of-contract claim solely upon Section 1603, a non money-mandating source, this Court lacks jurisdiction over this claim."); Def.'s Reply at 14 ("Although [there is] a general presumption that money damages are an available remedy upon breaches of . . . express and implied-in-fact contracts, this presumption is not applicable here because Section 1603 is not money-mandating and does not support a claim for money damages upon breach."). However, this court has already held that section 1603 is a money-mandating source of law.

In addition, unlike in *Rick's Mushroom*, here there is no express contract that, from the outset, would preclude the inference of an implied-in-fact contract. Because Count II of the complaint contains a non-frivolous allegation that the government entered into a contract with plaintiffs, defendant's motion to dismiss that count under RCFC 12(b)(1) must be denied. *See Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000) ("[The] complaint presents a non-frivolous allegation of the existence of an implied-in-fact contract; this is sufficient to confer jurisdiction in the Court of Federal Claims under 28 U.S.C. § 1491(a)(1).") (citing *Gould v. United States*, 67 F.3d 925, 929 (Fed. Cir. 1995)).

## B.    Motion to Dismiss Count II for Failure to State a Claim

Defendant argues that plaintiffs' contract claim must be dismissed for failure to state a claim because that count of the complaint does not allege facts sufficient to meet the requirements of an implied-in-fact contract. Because the court concludes that plaintiffs have failed to demonstrate the existence of such a contract, defendant's motion to dismiss Count II under RCFC 12(b)(6) is granted.

The Supreme Court has explained that "[a]n agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996) (quoting *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597 (1923)). The elements of an implied-in-fact contract are the same as those required for an express contract: (1) mutuality of intent; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) actual authority to bind the government. *See Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (*Hanlin II*). Plaintiffs carry the burden of

demonstrating the existence of an implied contract.  *Id.*

Plaintiffs argue that section 1603 is promissory in nature because it requires the government to award grants to any applicant who meets the requirements of the statute.  Defendant, in contrast, counters that "[b]inding precedent establishes that statutes cannot form the basis of a legally operative promise or offer on the part of the government."  Def.'s Mot. at 10 (citing *Hanlin II*, 316 F.3d at 1329-30).  However, *Hanlin II* did not hold that a statute can never constitute an offer to enter into a contract.  Rather, the Federal Circuit held that the particular statute at issue in that case could not be interpreted in that manner.  *See Hanlin II*, 316 F.3d at 1330 ("We discern no language in the statute or regulation that indicates an intent to enter into a contract with an attorney who has reached and submitted a proper fee agreement with a veteran.").  Although the court rejects the categorical rule urged by defendant, it nonetheless holds that section 1603 cannot be interpreted as an unambiguous offer indicating the government's intent to enter into a contract.

There is a general presumption that statutes are not intended to create any vested contractual rights.  *See Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985) ("For many decades, this Court has maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'") (quoting *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79 (1937)); *Pa. Dep't of Pub. Welfare v. United States*, 48 Fed. Cl. 785, 791 (2001) (noting that a law will not be interpreted to create any contractual rights "absent some clear indication that the legislature intends to bind itself contractually").  In order to overcome this presumption, plaintiffs must point to specific language in section 1603 or to conduct on the part of the government that allows a reasonable inference that the government intended to enter into a contract.  Plaintiffs assert that the government's intent to enter a contract can be inferred from the conduct of Congress and the President in enacting and signing the Recovery Act.

In support of their argument that section 1603 should be construed by this court as an offer by the government to enter into a unilateral contract, plaintiffs cite *Radium Mines, Inc. v. United States*, 153 F. Supp. 403, 405-06 (Ct. Cl. 1957), and *Grav v. United States*, 14 Cl. Ct. 390 (1988) (*Grav I*), aff'd, 886 F.2d 1305 (Fed. Cir. 1989) (*Grav II*), two cases that are distinguishable from the facts in this case.  While those cases held that a statute or regulation can constitute an offer to enter

into a unilateral contract, the statutory and regulatory provisions discussed in those cases clearly expressed the government's intent to enter into contractual arrangements with program participants and thus had overcome the general presumption that a statutory entitlement does not create contractual rights.

In *Radium Mines*, the Court of Claims held that a regulation stating that the government would purchase uranium from mining companies at specified prices was an offer to enter into unilateral contracts. Unlike section 1603, the regulation at issue in that case stated that the government would enter into a contract with any producer who offered to sell uranium to the government, provided that the uranium met the requirements set forth in the regulation. For example, the regulation in *Radium Mines* stated that upon the receipt of a written offer and an acceptable sample of uranium from a program applicant, the government would "forward to the person making the offer a form of contract containing applicable terms and conditions ready for his acceptance." *Radium Mines*, 153 F. Supp. at 405. There is no indication in section 1603 that the government intended to enter into a contractual relationship with any reimbursement grant recipient. On the contrary, that section simply provides that the government will make an outright payment to any applicant who meets certain specified conditions.

Similarly, the statute at issue in *Grav I* established a program that required the government to enter into a contract with any milk producer that agreed to reduce its production during a specified fifteen-month period. In that case, the Claims Court noted that the statute at issue provided that the "Secretary shall . . . provide for a Milk Diversion Program under which the Secretary shall offer to enter into a contract . . . with any producer of milk in the United States for the purpose of [reducing milk production]." *Grav I*, 14 Cl. Ct. at 392. The court further concluded that the government had no discretion to refuse to enter into a contract with any qualified producer. *See id.* at 393 ("It is the court's conclusion that Congress intended the Secretary to be the offeror under this particular program. Therefore, it follows from this conclusion that Congress mandated that the Secretary enter into contracts, for the payment of money, to *any* producer who qualified for the milk diversion program.").[9] Like the regulation asserted in

---

[9]/ Although it affirmed the trial court's decision, the Federal Circuit did not adopt the contractual theory upon which that decision was based. Rather, the Federal Circuit held that the statute was a money-mandating source of law for purposes of this court's jurisdiction under the Tucker Act. *See Grav II*, 886 F.2d at 1307.

*Radium Mines*, and unlike section 1603, the statute at issue in *Grav I* expressly required the government to enter into written contracts with program participants.

The court does not discern and plaintiffs have not pointed to any language in section 1603 or its legislative history that would allow a reasonable inference that the government intended to enter into contracts with all persons and entities that filed applications for reimbursement grants. Even if the government had a statutory obligation to approve plaintiffs' grant applications and to award such grants to plaintiffs, that fact does not automatically lead to the conclusion that the government intended to form a binding contract with plaintiffs. *See Hanlin II*, 316 F.3d at 1331 (noting that the government "may indeed be obligated to follow a statute or regulation regardless of whether it also has a contractual duty to perform"). Unlike the regulatory or statutory provisions at issue in *Radium Mines* and *Grav I*, there is no express language in section 1603 to support plaintiffs' assertion of an implied-in-fact contract. Because plaintiffs have not demonstrated an unambiguous offer or the parties' mutual intent to enter a contract, the court must dismiss plaintiffs' contract claim.

In accordance with the foregoing, the court concludes that it has subject matter jurisdiction over both counts of the complaint. For that reason, defendant's motion to dismiss the complaint under RCFC 12(b)(1) is denied. Because the court concludes that Count II of the complaint fails to state a claim upon which relief can be granted, however, that count must be dismissed with prejudice under RCFC 12(b)(6). Thus, defendant's motion to dismiss plaintiffs' contract claim is granted.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1)     Defendant's Motion to Dismiss, filed July 7, 2010, is hereby **DENIED in part**, as to Count I of the complaint, and **GRANTED in part**, as to Count II of the complaint;

(2)     The Clerk's Office is directed to **DISMISS** Count II of the complaint with prejudice;

(3)     The parties are directed to **CONFER** to determine how they wish to proceed with respect to Count I of the complaint and

27

whether this case may be settled by the parties; and

(4)     The parties shall **FILE** a **Joint Status Report** by **February 18, 2011** proposing the next steps in this litigation.

/s/Lynn J. Bush
LYNN J. BUSH
Judge